

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 26, 1960

Affirmed by C-35

Mr. Raymond W. Vowell
Executive Director
Board for Texas State Hospitals
  and Special Schools
Austin, Texas

Opinion No. WW- 896

Re: Whether the Board for
Texas State Hospitals and
Special Schools may le-
gally adopt appropriate
rules and regulations pro-
viding for the restraint
of patients who have volun-
tarily committed themselves
to the Board's care, when
such patients attempt to
leave the hospital while in
an active, contagious and
communicable state and re-
lated question.

Dear Mr. Vowell:

We are in receipt of your letter dated June 27th in
which you requested an opinion from this office concern-
ing the following questions:

"1.  May this Board legally adopt
appropriate rules and regulations pro-
viding for the restraint of patients
who have voluntarily committed them-
selves to our care when such patient
attempts to leave the hospital while
in an active, contagious and communi-
cable state against medical advice?

"2.  If your answer to the above
is in the affirmative, would the heads
of the hospitals, in carrying out the
rules and regulations adopted by the

> Board, be responsible in damages there-
> for?"

In Attorney General's Opinion O-7131 (1946) this office passed on substantially the same question, that is, the validity of the State Board of Health's passing rules and regulations covering the detention for treatment of persons having those communicable diseases which in the opinion of the State Health Officer constitute a real menace to public health. In that opinion we held:

> "The power of the Legislature to prevent the introduction and spread of infectious and contagious diseases cannot be questioned, and, accordingly, health authorities are usually empowered to take such action as may be considered expedient to prevent the outbreak of epidemic and communicable diseases. Thus all rules and regulations adopted pursuant to legislative authority, which are reasonably calculated to preserve the public health, are valid  The power to make quarantine regulations is one  of the most important conferred upon health authorities and such regulations constitute a proper exercise of the police power. These general principles are so firmly entrenched in our system of jurisprudence as to admit of no conjecture, and we therefore cite no cases to sustain them. Your attention is directed to the annotations in 2 A.L.R. 1539 and the legion of cases there cited."

Section 2 of Article 4477-11 of Vernon's Civil Statutes, which is styled as the "Texas Tuberculosis Code" states as follows:

> "It is the purpose of this Code to provide care and treatment for those afflicted with tuberculosis, to facilitate their hospitalization, and to enable them to obtain needed care."

The Legislature of the State of Texas in Section 4 of such statute provides that:

"Tuberculosis in a contagious, infectious, or communicable state is hereby declared to be dangerous to public health."

In providing the duties of the Board for Texas State Hospitals and Special Schools, the Legislature enacted among other provisions Section 12 (b) which states as follows:

"(b) The Board shall prepare and adopt by-laws, rules, and regulations for the government, control, and management of all State tuberculosis hospitals, prescribing the duties of all officers and employees, and for enforcing the necessary discipline and <u>restraint of all patients.</u>" (Emphasis added).

You state in your letter to us that your Board, which is charged with the responsibility of caring for tuberculous patients, has become aware of the fact that many patients who voluntarily admit themselves through the county courts to tuberculosis hospitals and after receiving some treatment will absent themselves from these hospitals while in an active, contagious and communicable state and against medical advice. You mention that the problem has become so acute that during the present fiscal year, 541 or 44.5 percent of all discharged patients have so absented themselves.

In seeking to ascertain the intent of the Legislature at the time that House Bill 421, 56th Legislature, Regular Session, which is now codified as Article 4477-11, Vernon's Civil Statutes, was enacted, we must look to Sections 2 and 4 previously cited, as well as Section 5 of this Act. Section 5 sets out in detail what is to be done upon receipt of a report of a case of tuberculosis to any local health authority and the measures for protection of other persons from infection by such diseased persons. It provides that such diseased person must place himself under medical care from a licensed physician, hospital, or clinic for treatment until such time that a certificate can be furnished from such health authority that such person is free from tuberculosis in an infectious or contagious state.

Subsection (c) of Section 5 provides as follows:

"(c) Any person who violates the provisions of Section 4 (d), or who fails to follow the directions of the local health authority, or who fails to follow the directions of his attending physician pursuant to Section 4 (c), or who in the opinion of the local health authority cannot be treated with reasonable safety to the public, at home, may be quarantined, as that term is hereinafter defined, and the local health authority may direct, pursuant to rules and regulations promulgated by the Department, the removal of the person to a suitable place for examination, and if such person is found to be infected with tuberculosis in an infectious and contagious state, then such person may be quarantined, as that term is hereinafter defined, until such person is no longer in an infectious and contagious state. (Emphasis added).

"Quarantine, as used in this Section, means the limitation of movement and separation, during that period of time while infectious and contagious, from other persons not so infected, in such places and under such conditions as will prevent the direct or indirect conveyance of such infectious or contagious condition to others not so infected.

"A person found to be infected with tuberculosis in an infectious and contagious state and quarantined under the provisions of this Section may be placed in any place suitable for the detention and segregation required under the provisions of this Section. If suitable facilities are not available within the jurisdiction of the local health authority, then in such event, the person so quarantined may be transported to a State tuberculosis hospital designated by the Board. The Board is hereby empowered and directed to provide suitable facilities for detention of such individuals.

"  . . ."

Subsection (d) of Section 5 provides:

"(d) It shall be the duty of all per-
sons infected with tuberculosis, or who,
from exposure to tuberculosis, may be liable
to endanger others who may come in contact
with them, to strictly observe such instruc-
tions as may be given them by any local
health authority of the State in order to
prevent the spread of tuberculosis."

Section 6 provides as follows:

"Any person violating the provisions
of Sections 4 or 5 of this Act shall be
guilty of a misdemeanor and upon convic-
tion shall be punished by a fine of not
less than Fifty Dollars ($50.00) nor more
than Five Hundred Dollars ($500.00) and/or
by imprisonment in the county jail for not
more than thirty (30) days."

It is our opinion that the provisions of the Act to
fight and control the disease of tuberculosis are clear.
While the Tuberculosis Code provides a method for volun-
tary admission by persons in a contagious condition with
this disease to State hospitals, this does not mean that
such persons remain in these tubercular hospitals as
guests and free to leave at their discretion. It is our
opinion that the mode of admission to such hospitals is
only ancillary, for only one class of persons are eligible
to gain admittance and they are those who have tuberculo-
sis in an active, contagious and communicable state and who
cannot be treated safely in the community from which they
come. Once these persons are admitted either voluntarily
or involuntarily, your Board is charged with the duty and
the responsibility of caring for such persons until such
time as they can be pronounced free from this contagious
disease.

It is our further opinion that the Board for Texas
State Hospitals and Special Schools has the authority by
virtue of Subsection (b) of Section 12 of this Act to pro-
mulgate such rules and regulations for the restraint of
"all" patients as they think necessary. The general rule
is that where statutes delegate to subordinate governmental

agencies and authorities the power to enact, establish and enforce health regulations, they are to be liberally construed in order to effectuate the purpose of their enactment. 25 Am. Jur., Health, Sec. 8, p. 291. So long as such regulations are reasonable and impartial and not against the general policy of the State, they must be submitted to by individuals for the good of the public. Regulations by an agency authorized to promulgate them will be sustained if upon a reasonable construction there appears to be some substantial reason why they will promote the public health and if they are reasonably adapted to or tend to accomplish the result sought. To this end, the constitutional guarantees of due process and equal protection of the law were not intended to limit the subjects from which the police power of a state may lawfully be exerted. 25 Am. Jur., Health, Sec. 21, pp. 299, 300.

Your second question concerns the liability of the heads of the hospital for damages in carrying out the regulations adopted by the Board.

It is the general rule that the agents of the State shall not be personally held liable for their acts when done pursuant to statute or official acts performed in the administration of their official duty. Chester Ray Morris v. Arno Nowotny, et al, 323 S.W. 2d 301, and the cases cited therein. When acting within the scope of a statute or valid rule promulgated by your Board, it is our opinion that officials so acting would fall within this general rule of immunity as to personal liability.

## SUMMARY

The Board for Texas State Hospitals and Special Schools may legally adopt appropriate rules and regulations providing for the restraint of patients who have voluntarily committed themselves to their care when such person attempts to leave the hospital while in an active, contagious and communicable state and against medical advice.

The general rule is that the agents of

the State shall not be held personally
liable for their acts when done pursuant
to statute or official acts performed in
the administration of their official duty.

Yours very truly,

WILL WILSON
Attorney General of Texas

By

Leon F. Pesek
Assistant

LFP:mm:ms

APPROVED

OPINION COMMITTEE:
Houghton Brownlee, Jr.

Robert T. Lewis
Thomas Burrus
Bob Eric Shannon

REVIEWED FOR THE ATTORNEY GENERAL
BY: Leonard Passmore